Samuel A. Schwartz, Esq.
Bryan A. Lindsey, Esq.
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re: | Case No.: 14-61370-11 |
| Steven V. Sann, | **NOTICE OF HEARING** |
| | **Hearing Date: May 7, 2015** |
| Debtor. | **Hearing Time: 9:00 a.m.** |
| | **Location: Federal Courthouse** |
| | **Missoula, Montana** |

**LIMITED OPPOSITION TO MOTION TO DISMISS OR CONVERT TO CHAPTER 7**

Steven V. Sann, the above captioned debtor and debtor-in-possession (the "**Debtor**"), hereby submits this limited opposition (the "**Opposition**") to the Motion (the "**Motion**")[1] of the Acting United States Trustee (the "**UST**") to dismiss the Debtor's Chapter 11 case or convert the same to Chapter 7 pursuant to 11 U.S.C. § 1112(b). In support of the Opposition, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The UST's Motion is correct with respect to the fact that the Debtor's assets are frozen pursuant to that certain stipulated asset freeze order (the "**Asset Freeze Order**") entered by the United States District Court for the District of Montana in that certain civil action by the Federal Trade Commission (the "**FTC**") against the Debtor and others (Case No. 9:13-cv-00003-DLC). Despite the UST's characterizations, the Debtor filed his motion to transfer assets to his bankruptcy

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

Page 1 of 8

case with the intent to make the assets subject to the purview of this Court, and in an effort to reorganize and maximize the value of his bankruptcy estate. As the Montana District Court denied that motion, the Debtor's next attempt at reorganizing was to enter into settlement negotiations with the FTC. In fact, a settlement conference between the Debtor and the FTC was held earlier this month. Unfortunately, however, the Debtor was not able to settle with the FTC and will be going to trial.

2. Due to the Asset Freeze Order and the Debtor's inability to settle with the FTC, reorganization is not likely in this case until after the Debtor's trial. Due to the same Asset Freeze Order, however, liquidation is not possible as well. Accordingly, at this point in time, the Debtor believes this Court should either: (i) dismiss this Chapter 11 case; or (ii) allow the Debtor to continue in Chapter 11 until after the FTC trial.

3. Conversion of this case to Chapter 7 is not in the best interests of creditors because a Chapter 7 trustee will still be bound by the Asset Freeze Order and will not be able to accomplish anything more than the Debtor while the FTC case is pending. Indeed, a Chapter 7 Trustee would not be able to liquidate any assets, and despite such an appointment, a Chapter 7 Trustee would likely need to wait several months before being able to conduct any type of liquidation. Accordingly, conversion to Chapter 7 serves no purpose at this time.

4. Moreover, dismissal of this case will not prejudice any parties because the Asset Freeze Order remains in place, subject to the purview of the Montana Federal District Court. Indeed, with the Asset Freeze Order in place and no burden of the automatic stay, dismissal of this case appears to be in the best interests of all creditors.

5. Finally, while the UST lists several allegations against the Debtor to support its Motion, the UST rarely cites to any specific subsections of Section 1112(b) to demonstrate cause. In

fact, the only specific subsection cited its Section 1112(b)(4)(F), with respect to the lack of filing Form B-26 for the Debtor's entities. Omitted from the UST's Motion, however, are several instances of good faith on the part of the Debtor and the fact that he is complying with his duties as a debtor in possession. Specifically, the Debtor continues to file monthly operating reports, pay United States Trustee's fees, and has appeared for five (5) separate meetings with the UST, including one initial debtor interview and two 341 meetings in Las Vegas, and one initial debtor interview and one 341 meeting in Montana, which meeting lasted over 6 hours.

6. The Debtor also turns over his monthly FTC reporting to the UST, which includes financial data of all of his operating entities, which are also subject to the limits of the Asset Freeze Order.

7. Simply put, the Debtor's case is complex and the Debtor is doing his best to comply with his duties as a debtor in possession. Unfortunately, however, the Debtor was unable to settle with the FTC and will now be proceeding to trial. In the meantime, however, the Asset Freeze Order remains in place, thereby limiting any efforts of: (i) the Debtor to reorganize; or (ii) a Chapter 7 trustee to liquidate. Accordingly, the Debtor consents to the dismissal of his Chapter 11 case, or in the alternative, his Chapter 11 case should remain until conclusion of the Debtor's trial with the FTC.

## Argument

**The Debtor Consents to Dismissal of his Chapter 11 Case**

8. While the Debtor disputes that "cause" has been established requiring conversion or dismissal of his Chapter 11 case, the Debtor consents to dismissal. As set forth above, the Debtor was not able to reach a settlement with the FTC. As a result, the Asset Freeze Order remains in place which restricts the Debtor's ability to reorganize or liquidate. The Debtor is going to trial with

the FTC and his criminal defense counsel is currently preparing "change of plea" paperwork in order to request the FTC civil matter proceed to trial prior to the Debtor entering into a plea agreement with the United States.

9. With the Asset Freeze Order in place, conversion to Chapter 7 is not appropriate. Indeed, a Chapter 7 trustee will be bound by the Asset Freeze Order and will not be able to liquidate any of the Debtor's assets until conclusion of the FTC trial. Conversion of this case to Chapter 7 will cause a Chapter 7 trustee to sit and wait for several months or years if there are appeals, after which there may not be anything to liquidate. If the FTC prevails in its civil matter and obtains a judgment that the Debtor's assets are actually property of thousands of consumers, there will be nothing left for a Chapter 7 trustee to liquidate. Accordingly, conversion to Chapter 7 is not appropriate at this time.

**The UST Has Not Established Cause Under Section 1112(b)**

10. Conversion or dismissal is governed by section 1112(b) of the Bankruptcy Code, which provides, in pertinent part:

> (1) [O]n request of a party in interest, and after notice and a hearing… the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes cause.
>
> …
>
> (4) For purposes of this subsection, the term 'cause' includes –
>
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or bankruptcy administrator, if any);
(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J) failure to file disclosure statement, or to file or confirm plan, within the time fixed by this title or by order of the court;
(K) failure to pay fees or charges required under chapter 123 title 28;
(L) revocation of an order of confirmation under section 1144
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

11. Here, the UST argues that "cause" exists due to numerous allegations, including the Debtor's failure to timely prosecute his case, the need to amend his schedules; the need to retain professionals, the filing of his case in Nevada and the pending criminal case against the Debtor. Importantly, however, despite the UST's exhaustive list, the Motion seldom refers to any specific subsections of 11 U.S.C. § 1112(b) that would constitute "cause."

12. Indeed, this case was filed on September 29, 2014, and is just over 5 months old. After filing his petition, the Debtor immediate filed several first day motions and sought to transfer: (i) the Big Waters Ranch and Salmon Lake Properties back to his bankruptcy estate, in order to subject them to the automatic stay and allow the Debtor to reorganize them; and (ii) trust funds in his attorneys' IOLTA accounts to his debtor-in-possession account, whereby such funds would be part of his bankruptcy estate subject to the purview of this Court. After the transfer motion was denied by the Nevada Bankruptcy Court and the Montana District Court, the Debtor sought a settlement

conference with the FTC, which took place in early March 2015. While the Debtor was not able to reach a settlement with the FTC, the above facts show that the Debtor has prosecuted his bankruptcy case. Indeed, due to the Asset Freeze Order, the Debtor is now severely restricted from prosecuting his case until resolution of the FTC matter.

13. With respect to the Debtor's schedules, the Debtor is doing his best to make them accurate, and has appeared at two initial debtor interviews and three 341 meetings. While the Debtor did list 10 bank accounts in his initial bank accounts motion, 5 of those bank accounts are business bank accounts and not accounts of the Debtor. Furthermore, the statements in the transfer motion referring to Bibliologic, Ltd. as an asset of the Debtor was a mistake by the Debtor's counsel. Indeed, despite a few inaccuracies on the Debtor's first day motions, the Debtor's schedules are correct with respect to his bank accounts and his lack of ownership interest in Bibliologic, Ltd. Indeed, the Debtor appeared at the latest 341 meeting in Montana and answered questions regarding his schedules for over 6 hours. While the Debtor is in the process of reviewing and making amendments requested by the UST, the current status of the Debtor's schedules does not constitute cause for conversion or dismissal.

14. Regarding the Debtor's employment of professionals, the Debtor's retention of his bankruptcy counsel was approved by the Nevada Bankruptcy Court. The Debtor does need the services of other professionals including FTC counsel, criminal counsel and other accountants, but due to the Asset Freeze Order, no funds can be used to pay professionals absent an order from the Montana District Court. Accordingly, the Debtor's other professionals will either: (i) make an application to be retained by this Court; or (ii) apply to the Montana District Court for payment. Indeed, the Montana District Court already approved the appointment of the Debtor's criminal defense counsel, who gets paid with funds preserved by the Montana District Court.

15. Finally, with respect to the Debtor's plea agreement, the Debtor's criminal counsel is currently preparing the necessary paperwork for a change of plea. Simply put, the Debtor decided to litigate with the FTC. Accordingly, with the Asset Freeze Order, the pending FTC case and the pending criminal case, it appears that relatively little can be done in bankruptcy over at least the next several months, whether in Chapter 11 or Chapter 7. Therefore, with the Asset Freeze Order in place and no burden of the automatic stay, it appears that creditors are best served by the dismissal of the Debtor's Chapter 11 case. Alternatively, if the Court is not inclined to dismiss the Chapter 11 case, the UST's Motion should be continued until after the conclusion of the FTC trial, the outcome of which will determine whether there are any assets to reorganize or liquidate.

16. Therefore, while "cause" does not exist to convert or dismiss the Debtor's Chapter 11 case at this time, the Debtor consents to the dismissal of his Chapter 11 case, whereby the Debtor will proceed to trial with the FTC and creditors will be protected by the Asset Freeze Order.

WHEREFORE, the Debtor respectfully requests that this Court dismiss his Chapter 11 case, or alternatively, continue the UST's Motion until after the conclusion of the FTC trial.

Dated this 20th day of March, 2015.

Respectfully Submitted,

/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Bryan A. Lindsey, Esq.
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of the foregoing were sent via Electronic Mail on March 20, 2015, to the following:

JAMES A. BOWDITCH on behalf of Creditor 181 FREMONT, LLC
jbowditch@boonekarlberg.com

MICHAEL W. CHEN on behalf of Creditor BANK OF AMERICA, N.A.
bknotice@mccarthyholthus.com

RODNEY M. JEAN on behalf of Creditor MONTANA DEPARTMENT OF REVENUE
RJEAN@LIONELSAWYER.COM

NEAL G. JENSEN on behalf of U.S. Trustee OFFICE OF THE U.S. TRUSTEE
Neal.G.Jensen@usdoj.gov

KEITH A JONES on behalf of Creditor MONTANA DEPARTMENT OF REVENUE
kjones@mt.gov

MICHAEL MORA on behalf of Creditor FEDERAL TRADE COMMISSION
mmora@ftc.gov

AMANDA LILLIAN MYERS on behalf of Creditor MONTANA DEPARTMENT OF REVENUE
amyers@mt.gov,
kjones@mt.gov;kimdavis@mt.gov;egober@mt.gov;tomfox@mt.gov;ldahl@mt.gov;MGohn@mt.gov

OFFICE OF THE U.S. TRUSTEE
ustpregion18.gf.ecf@usdoj.gov

/s/ Janine Lee
    Janine Lee