## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**STEVEN VINCENT SANN,**

                    Debtor.

Case No.  **14-61370-11**

# MEMORANDUM OF DECISION

At Butte in said District this 29th day of April, 2015.

In this Chapter 11 case, on March 6, 2015, the U.S. Trustee ("UST") filed a Motion to Dismiss or Convert the case to a case under Chapter 7 (Document No. 162) (the "UST's Motion") for "cause" under 11 U.S.C. § 1112(b).  The Debtor filed a "limited opposition" to conversion, and the matter was heard at Missoula on April 16, 2015.  The Debtor agrees that the evidence supports a finding of "cause" under  § 1112(b) and consents to dismissal, but Debtor opposes conversion and argues that the "best interests of creditors" warrants dismissal.

At issue is whether the "best interests of creditors and the estate" shown by the evidence warrants dismissal of this case, or conversion to Chapter 7 under § 1112(b).  After review of the record, this Court finds and concludes that conversion of the case to a case under Chapter 7 is in the best interests of creditors and the estate.  Accordingly, the UST's Motion to Convert is granted and this case is converted to a case under Chapter 7.

This Court has jurisdiction of this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a).  The U.S. Trustee's motion to dismiss or convert is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  This Memorandum of Decision includes the Court's findings of fact and

1

conclusions of law.

Attorney Neal G. Jensen ("Jensen") represented the UST at the hearing and clarified that the UST requests conversion of the case to Chapter 7 rather than dismissal, but the UST would also support appointment of a trustee under chapter 11 under 11 U.S.C. § 1104(a)(1).  The Debtor Steven V. Sann ("Sann" or "Debtor") appeared at the hearing on April 16, 2015, represented by attorneys Samuel A. Schwartz ("Schwartz") of Schwartz Flansburg PLLC, of Las Vegas, Nevada, and by local counsel James A. Patten of Billings.  Schwarz agreed that "cause" exists under § 1112(b), but requested that the case be dismissed.  The United States of America, Federal Trade Commission ("FTC") filed a joinder in the UST's Motion requesting that the case be converted to Chapter 7 and was represented by attorney Michael P. Mora ("Mora").  The Montana Department of Revenue ("DOR") filed a joinder in the UST's Motion requesting that the case be converted to Chapter 7 or, alternatively, for appointment of a trustee, and was represented at the hearing by special assistant attorneys general Amanda L. Myers ("Myers") and Keith A. Jones.

The Debtor did not testify, nor was any live witness testimony offered at the hearing.  Instead, counsel for all parties stipulated to admission of the following exhibits ("Ex."), which were admitted into evidence:  UST's Ex. 1–through–31; DOR's Ex. 33–through–62 ; and Debtor's Ex. A, B, C, D, E, F, and G.  Following the admission of exhibits, without objection counsel for each party was permitted to submit a proffer of the evidence in the record.  After the initial proffers, counsel were permitted to reply to the other proffers.  Then, the Court allowed each counsel the opportunity to present oral argument in support of their respective positions, and finally counsel were give the opportunity for rebuttal argument.  At the conclusion of the parties'

presentations the Court took the UST's Motion under advisement.  The Court having reviewed

the UST's Motion, joinders, Debtor's objections, the exhibits and applicable law, this matter is

ready for decision.

## FACTS

Steven Sann is 61 years old and has stated that "I've always been an entrepreneur."  Ex.

19, Transcript of § 341 meeting of February 23, 2015 ("Tr."), p. 223.  He admits that most of his

businesses have failed.  He has claimed residence in Montana and Nevada.

The instant Chapter 11 case is not Sann's first bankruptcy case.  Sann filed a Chapter 13

case, No. 99-32906, on November 12, 1999.  His chapter 13 plan in that case was confirmed, but

Sann filed a motion to convert and the case was converted to chapter 7 on June 8, 2000.  The

trustee in 99-32906 filed a no-asset report.  A discharge of debtor was entered on September 13,

2000, and the case was closed on September 19, 2000.

Ex. 26 is a "Judgment in a Criminal Case" entered against Sann on February 26, 2013, in

Case No. CR 11-61-M-DLC-04 in the United States District Court for the District of Montana.

In that case Sann pleaded guilty of conspiracy to maintain a drug-involved premises.  Schwartz

explained that Sann was in the medical marijuana business, but stopped when he was prosecuted.

As a result of his guilty plea Sann was sentenced to 4 years of probation.  The list of standard

conditions of supervision on page 2 of Ex. 26 includes:  "1)  the defendant shall not leave the

judicial district without the permission of the court or probation officer, . . . 6) the defendant shall

notify the probation officer at least ten days prior to any change in residence or employment."

Despite those travel restrictions Sann traveled to Las Vegas, Nevada, and tried to

establish domicile there for the purpose of filing a chapter 11 bankruptcy.  He obtained a Nevada

driver's license.  At the § 341 meeting Sann testified that he was given permission to travel to

Nevada and other states regularly by his probation officer.  Ex. 19, pp. 12-13.

On or about January 8, 2013, the FTC filed a civil complaint for permanent injunction

and other equitable relief against Sann, his spouse and several other persons and entities,

including "Relief Defendant" Bibliologic, Ltd. ("Bibliologic[1]"), Ex. 20, in the United States

District Court for the District of Montana, Missoula Division (the "civil case").  The complaint

alleged deceptive business practices by Sann and other defendants which resulted in their

"cramming" of unauthorized charges on consumers' monthly telephone bills for services that

consumers neither requested nor authorized, in violation of the FTC Act, 15 U.S.C. § 45(a).  The

complaint alleges the cramming totaled over $70 million, and resulted in net revenues to

defendants of over $26 million.  Ex. 20, p. 12.  Ex. 20 sought a preliminary injunction,

disgorgement of ill-gotten gains, a permanent injunction against future violations of the FTC Act,

and other equitable relief.

In that case, No. CV 13-3-M-DLC, on May 8, 2013, the district court entered a

"Stipulated Preliminary Injunction and Order," Ex. 21/Ex. A, to which Sann and other defendants

consented, as confirmed by Schwartz at the hearing.  In addition to prohibiting any telephone

billing of charges on any consumer's landline or mobile telephone bill, or use of any consumer

information, the court imposed an "asset freeze" against Sann and other defendants, with certain

exceptions. Ex. 21.  Sann and his spouse were authorized under the asset freeze to pay $4,914.00

per month for the mortgage on their primary residence, to pay other personal and business

---

[1]Bibliologic is identified in Ex. 20, p. 9, as a nonprofit corporation registered in Montana which allegedly received ill-gotten gains that can be traced directly to the defendants' unlawful acts alleged in the complaint.

4

expenses not to exceed $12,930 per month, and to pay two (2) mortgage payments to 181

Fremont, LLC, in the amounts of $20,265.00 per quarter and $34,161.00 per quarter for real

properties identified as "Big Waters Ranch" and "Salmon Lake Property."  Ex. 21/A, pp. 11, 12.

The court specified:  "Restrained assets may be released to pay a Defendant's or Relief

Defendant's other reasonable and necessary living expenses, business expenses, or attorneys fees

*only upon further order of this Court, or with the written consent of the FTC*."  Ex. 21, p. 12

(Emphasis added).

Further, in the event the United States of America or any State charged Sann, or other

defendant or company in which Sann holds a controlling interest, with any criminal offense

stemming from participation prior to the initiation of the federal court case, the asset freeze

would be modified to authorize Sann to utilize up to $10,000 of his assets to pay reasonable and

necessary legal expenses for his defense.  Ex. 21, p. 10.  Mora stated that Sann moved to stay all

proceedings in the civil case and that the district court granted the motion and the civil case

remains stayed, except for the asset freeze and the monitoring and enforcement of the asset

freeze.

On September 12, 2013, an indictment was filed against Sann in CR 13-43-M-DLC in the

United States District Court for the District of Montana alleging several criminal counts of wire

fraud, conspiracy, overt acts, and seeking forfeiture of assets under federal statutes.  Ex. 23/B.

Ex. 24/C is a plea agreement between the United States and Sann in CR 13-43-M-DLC.  Sann

signed Ex. 24 on January 23, 2015.  Sann's attorney argued that he did not plead guilty to

"cramming," but he did plead guilty to filing a false report.

In the plea agreement, Ex. 24, in return for dismissal of all other counts Sann agreed to

change his plea to guilty "because he is in fact guilty of the charges contained in Counts XIII and

XXXIV." Ex. 24, p. 3. Sann acknowledged that he knowingly devised a scheme or plan to

defraud, "or a scheme or plan for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises;" and that he "acted with the intent to defraud; that is, the

intent to deceive or cheat." Ex. 24, pp. 3, 4. With respect to Count XXXIV, Sann acknowledged

that he knowingly engaged in a monetary transaction which involved property criminally derived

from wire fraud, and he agreed to forfeiture of $500,000 in property involved in the money

laundering charges. Ex. 24, pp. 4, 5.

Schwartz stated at the hearing that the indictment included 40 counts, but that Sann

pleaded guilty to only two counts. Sann's counsel rationalized his guilty plea by explaining that

Sann was facing a prison term of 30 years if convicted at trial. Sann agreed that a sentence of 24

months of imprisonment is an appropriate resolution of the case if the court accepted the plea

agreement. Ex. 24, p. 3.

A change of plea hearing was held at Missoula in Case CR 13-43-M-DLC on April 3,

2015. Sann attended the hearing and acknowledged that he signed the plea agreement. Ex. 25, p.

11. After an explanation of the proceedings from the court, Sann answered "Yes" when asked if

he still desired to plead guilty of Counts XIII and XXXIV. Ex. 25, p. 18. After hearing a

recitation of the United States' offer of proof for the two counts, Sann answered "No, sir" when

asked if he disagreed or thought anything in the offer of proof was wrong. Ex. 25, p. 18. Sann

pleaded guilty of Count XIII and XXXIV and the court accepted his guilty please. Ex. 25, pp. 25,

26. Sentencing is scheduled to take place on July 17, 2015.

Sann filed a voluntary chapter 11 petition commencing the instant case in the United

6

States Bankruptcy Court for the District of Nevada on September 29, 2014, claiming his residence in Clark County, Nevada.  Sann asked the FTC to consent to the release of frozen funds for him to retain bankruptcy counsel, but the FTC did not consent.  Ex. 35, p. 3.

On October 1, 2014, Debtor filed several "first day" motions to authorize maintenance of existing bank accounts, to temporarily use an existing cash management system (Ex. 9), to approve the transfer of real property and funds held in attorneys' trust accounts to the Debtor (Ex. 10/D), and for other relief.  Ex. 11 is a supplement to Debtor's motion to transfer property.  The Debtor requested expedited relief on his first day motions.  FTC's counsel argued that the Debtor tried to use his first day motions to recover assets in circumvention of the preliminary injunction and asset freeze, but that he did not try to recover assets which he transferred to family members and insiders.  On October 10, 2014, Debtor filed a motion to use cash and cash collateral (Ex. 7).  The FTC and UST filed objections to Debtors' first day motions, and filed objections to Debtor's motion to use cash collateral and for expedited consideration of Debtor's first day motions.

Debtor opened a "DIP" account at US Bank.  Ex. 16.  Jensen alleged at the hearing that the Debtor has not transferred money and a tax refund into the DIP account, and is using three old bank accounts.  Schwartz argued that the Debtor did not have any check blanks to write checks from the DIP account, so he used a different, FTC-approved account.  Ex. 19, pp. 16-17.  Ex. 15 is the Debtor's monthly operating report ("MOR") for February 2015, and the last page of Ex. 15 shows a balance in the DIP account, ending in "4740," of $22,727.66.

Debtor filed his application to approve employment of Schwartz and his law firm on October 15, 2014.  Schwartz stated that because of the district court's reservation of the exercise of budgeting discretion over the expenditure of Sann's funds in Ex. G, confusion existed among

the Debtor's professionals about how to proceed with applications to approve employment and for compensation.

On October 16, 2014, the FTC filed a motion to transfer venue of the case from the District of Nevada to the District of Montana (Doc. 53), alleging that the Debtor was engaged in forum shopping and attempting an "end-run" around the district court's Asset Freeze Order. The FTC's motion, included a declaration from FTC attorney Richard McKewen, Ex. 35, which explains the FTC's enforcement action, location of Debtor's assets, and the Asset Freeze Order. Debtor filed an objection to FTC's motion to change venue.

On October 30, 2014, the UST filed a motion to appoint a trustee under 11 U.S.C. § 1104(a) because of fraudulent or dishonest acts by the Debtor.

Debtor filed his original Schedules and Statement of Financial Affairs ("SOFA") on November 5, 2014. Ex. 1. Ex. 1 includes Sann's signature on declarations after the Schedules and SOFA declaring under penalty of perjury that he read them and that they are true and correct. Ex. 1 includes a summary stating that Debtor has assets with a value in the amount of $2,960,449.40, and liabilities in the total amount of $3,308,869.78. Ex. 3 is the claims register admitted into evidence; it shows total claims filed in the amount of $5,489,973.67.

Schedule A lists real property in Stevensville, Montana, 4 lots in Granite County, Montana, and a patented mining claim, with a total value stated of $1,307,800. Schedule B lists personal property with a total value of $1,652,649.40, of which $783,352.20 is money held in the trust accounts of three law firms.

Schedule F on Ex. 1 lists creditors holding unsecured nonpriority claims in the total amount of $237,721.78, but does not include the FTC even though its federal civil case was

8

pending.  Schedule I shows $0 in wages or salary and states that the Debtor is not employed, but states a total of $41,986 in income from Debtor's business or rental properties and from the preliminary injunction allowance for living expenses ($17,844) and two mortgages.  Schedule J on Ex. 1 shows $37,349.21 in monthly expenses, mostly for mortgages which the district court and Jensen noted are in fact not being paid.  Schwartz stated that the Debtor's numbers on his original Schedules I and J were what he thought they were at the time and were consistent with the preliminary injunction.

Debtor's SOFA, Ex. 1, at item 1 ("Income from employment or operation of business") lists $149,807.00 as 2012 gross income, and $0.00 as gross income in 2013.  Item 2 lists his 2014 income year to date as $48,000.  Item 9 of Ex. 1 lists two (2) payments to The Schwartz Law Firm, Inc., on July 2, 2014, in the sum of $2,000.00 and on September 22, 2014, in the amount of $25,000.00.  No evidence exists that these payments by Debtor to Schwartz were authorized by the federal district court which entered the preliminary injunction and asset freeze, or that the FTC gave written consent as provided at Ex. 21, p. 12.

Item 10 of the SOFA, Ex. 1 ("Other transfers") lists nine (9) transfers and gifts from Sann to his family members and Bibliologic since December 2010, which is within the time limit to be subject to recovery by a trustee.  To date Sann has not initiated any adversary proceedings or motions to recover property from the transferees listed at item 10.  Jensen noted that the Debtor's first day motions, Ex. 10 and 11, did not request recovery of property which Sann transferred to family members.

Item 18 of the SOFA (Ex. 1) lists twenty business entities of the Debtor, of which only Emerica Media Corp, Sann LLC, Blue Stream Data, and Bibliologic are stated as presently

9

active.  Schwartz stated that Sann ceased operating his phone business in 2012.  Mora contended

that only Emerica Media Corp and Sann LLC are still in business, and all of Debtor's other

businesses are defunct.

The hearing on the FTC's motion to change venue was held on November 7, 2014.  On

November 18, 2014, the Nevada bankruptcy court made oral findings of fact and conclusions of

law, and then entered a written order (Ex. 17) incorporating its findings and conclusions (Ex. 18),

granting the FTC's motion and changing venue of the case to this Court.  The court found that

the Debtor's domicile, residence, principal place of business, and principal assets all are in

Montana, not Nevada.  Ex. 18, pp. 14, 22.  The court transferred the case to Montana instead of

dismissing it based:  On the convenience of the parties, in particular the unsecured creditors – six

of which are located in Montana or indicated they wished to have the case transferred; on

proximity of witnesses; and in the interests of justice based on Debtor's pending civil and

criminal litigation in Montana and based on the condition of the Debtor's probation which

prohibited him from departing Montana without approval of his probation officer.  Ex. 18, pp.

17-19, 21.  The court noted that one of the "primary purposes here for filing the case appears to

be to simply escape the existing exercise of jurisdiction by the Article III Court in Montana.  This

Court finds that that is exactly the kind of forum shopping that ought not to occur."  Ex. 18, p.

24.

In the civil case in the Montana federal district court, CV 13-3-M-DLC, Sann filed

motions to transfer all assets to the bankruptcy court, initially to the Nevada bankruptcy court,

and after transfer of venue to this Court.  The district court held a hearing on Sann's motions on

December 4, 2014, and entered an order (Ex. 22) on December 19, 2014, denying Sann's motions

to transfer assets to the bankruptcy court.  In Ex. 22 the court noted the stipulated preliminary injunction entered into by Sann and the FTC, including the asset freeze.  The district court further noted that the preliminary injunction allowed Sann and Bibliologic to make mortgage payments on two properties, but that Sann chose to pursue bankruptcy relief instead of making the authorized mortgage payments, which resulted in foreclosure proceedings against two properties. Because Sann chose not to pay the mortgages, the district court was not persuaded that the criminal charges, Sann's bankruptcy filing, and the foreclosure proceedings against Sann were significant enough to warrant termination of the stipulated asset freeze.  Ex. 22, p. 3.

The district court specifically found that based upon Sann's "history of unauthorized use of frozen assets, . . . , and the possibility that some of the assets may not fall under the bankruptcy court's jurisdiction,"[2] Sann's filing of a chapter 11 bankruptcy petition is  "not a significant enough change to warrant an end" of the district court's supervision.  Ex. 22, p. 4. This Court notes that the district court joined other courts which have held that the FTC's enforcement action in CV 13-3-M-M-DLC falls within the exception to the automatic stay under 11 U.S.C. § 362(b)(4).   Ex. 22, p. 4.

In this Chapter 11 case the United States of America, Internal Revenue Service, filed Proof of Claim No. 1 on October 8, 2014, and filed an amended Proof of Claim (Ex. 6) on March

---

[2]The court noted that if Sann's frozen assets are attributable to his unlawful conduct, then those assets would not be property of the estate and not within the jurisdiction of the bankruptcy court.  Ex. 22, p. 4.  It noted that Sann's use of frozen assets to pay his bankruptcy attorney was unauthorized, but his attorney returned the funds to his trust account.  Ex. 22, p. 4.  According to the UST's proffer, there are $650,000 in Debtor's funds in the trust account of his Montana criminal attorney Michael Sherwood; $10,793.64 in the trust account of Debtor's New York civil counsel, and $150,000 on deposit with the Clerk of the U.S. District Court for the District of Montana payable for Sann's criminal defense.  The district court has reserved to itself the determination of what is and is not necessary for Sann's defense.  Ex. G, p. 2.

25, 2015, asserting an estimated unsecured priority claim in the amount of $1,044,320.96, and an unsecured nonpriority claim in the amount of $191,250.95 in tax penalties. The FTC filed its Proof of Claim No. 10 on January 27, 2015, asserting an unliquidated claim based upon the FTC's deceptive trade practices civil action against the Debtor in the Montana federal district court. The DOR filed its Proof of Claim No. 14 on March 10, 2015, asserting a tax claim in the total amount of $918,851.76, including penalties and interest, for tax years 2007, 2008, 2009, 2010, 2011, and 2013. DOR's counsel stated that the DOR finished its audit of Sann for the years 2007-2010, but that Sann has not filed his 2013 Montana income tax return.

The claims register currently lists total claims filed in the amount of $5,489,973.67, including unsecured nonpriority claims, of which $3,189,432.18 are secured claims and $1,843,534.53 are priority claims. Ex. 3. The UST's counsel estimated the amount of unsecured nonpriority claims at $500,000.[3]

A § 341 meeting of creditors was held on February 23, 2015. Ex. 19. Jensen stated that Sann was required to file his Form B26 ("Periodic Report Regarding Value, Operations and Profitability of Entities in which this Debtor's Estate Holds a Substantial or Controlling Interest") prior to the initial § 341 meeting in October 2014, but that Sann did not file the Form B26 until April 3, 2015 (Doc. 192[4]) and the UST still has not been able to question Sann about its contents. Debtor did not file the B26 until after the UST moved for and was granted an order (Doc. 45) compelling the Debtor to file Official Form 26 and amended Schedules and SOFA.

_____

[3]The Court presumes the UST's estimate excluded the claim of the FTC.

[4]The report at Doc. 192 does not follow the format of Official Form 26. Instead Debtor simply appended a balance sheet, a profit & loss statement, and a statement of cash flow for a single entity, Sann, LLC.

Schwartz explained that Sann was busy preparing to file monthly FTC reports, Ex. 54, which are essentially the same as the B26.  Jensen disagreed that the two reports are the same.

Ex. 48 is a series of e-mail exchanges between DOR's tax counsel and Schwartz beginning March 2, 2015, to March 16, 2015, when Schwartz finally declined to produce documents which Sann had said he would produce at the § 341 meeting, unless the DOR requests them through a subpoena.  Debtor's counsel Schwartz admits that a miscommunication occurred between counsel, but he denies the accusation of mismanagement or failure by Debtor to perform his obligations to recover assets.

Ex. 2 are the Debtor's amended Schedules B, F, G, I, J and SOFA, filed on April 3, 2015.  Sann added the FTC's claim on Schedule F marked as contingent, unliquidated and disputed.  On amended Schedule I Debtor listed a reduced income in the amount of $1,450, described as rental income from Sann, LLC, and omitted the two mortgage payments allowed under the preliminary injunction and asset freeze, so his combined income was reduced from $41,986 per month to $19,294.  Ex. 1, 2.  His expenses were reduced from $37,349.21 to $9,607.21 on amended Schedule J.  Ex. 2.  Among other things, Debtor removed a payment to Appalogic business operating loan in the amount of $9,600 from his amended Schedule J.

Jensen asserted that the Debtor did not file any of the required Monthly Operating Reports ("MOR") on time in this case and that the UST had to file three notices of delinquent MORs and filed one notice of delinquent UST quarterly fee.  Debtor's counsel countered that Debtor was negotiating with the FTC and negotiating a plea deal with the United States when the UST was demanding the reports.  Ex. 37, 40 and 44 are the UST's notices of delinquent MORs.  Each of those three notices required this Court to issue orders to show cause and schedule a show

cause hearing, before the UST withdrew the notices after the Debtor filed the appropriate MORs late. Similarly, the Court had to issue an order and schedule a show cause hearing until the Debtor paid his delinquent quarterly fee and the UST withdrew the notice of delinquent fee.

Ex. 38, 39, 41, 42 and 43 are MORs filed by the Debtor. DOR's counsel contends that they show transfers by the Debtor to his spouse Teri Sann and that Ex. 49, a Mastercard statement, shows the Debtor spending $6,000 per month on meals and entertainment. Mora proferred that the Debtor has drawn a total of $500,000 in cash from the estate for his personal expenses and that the only way to stop the monthly diminution of the estate is to convert the case to chapter 7.

Debtor has not filed a disclosure statement or chapter 11 plan of reorganization. He filed a motion to extend exclusivity period for filing a chapter 11 plan and disclosure statement on January 21, 2015, which is opposed and is pending.[5]

## DISCUSSION

### A. Contentions of the Parties.

The UST asks for conversion of this case to Chapter 7 or, in the alternative, for appointment of a trustee if the case remains in chapter 11. At the hearing Jensen argued for the UST that no receiver is appointed in the civil case, despite the preliminary injunction/asset freeze and, thus, currently no effort is being taken to recover unlawful transfers or determine who is the owner of properties. The UST further argues that Sann's monthly draw of $17,844 for living expenses allowed under the preliminary injunction should cease upon appointment of a trustee,

---

[5]Given Debtor's counsel's admission that cause exists to dismiss or convert, and his consent and request for dismissal and the result herein, the Court deems Debtor's motion to extend the exclusivity period moot.

who also could take charge of the funds in Debtor's attorneys' trust accounts, which were transferred without court authorization.  The UST argues that Debtor has failed to voluntarily comply with the reporting requirements and has taken no action to recover assets even though he is the sole owner of Sann, LLC.  Jensen argued that the best interest of the creditors test does not mean the best interest of the Debtor, and that Sann's guilty pleas to three felonies show that he is not credible.

The DOR and FTC both join in the UST's Motion, alleging as cause substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation and gross mismanagement of the estate by Debtor.  Both support either conversion or appointment of a chapter 11 trustee and argue that conversion is in the best interests of creditors.

DOR's counsel argued that the Debtor has refused to produce documents requested and, that if the case is dismissed rather than converted, the Debtor will avoid accountability because the DOR would not have contempt relief in its administrative proceedings.  DOR contends that the Debtor is still engaged in misconduct and that appointment of a trustee in chapter 7 or 11 would cure the problems caused by Debtor's conduct, maximize and preserve estate value while the Debtor is imprisoned.  DOR complains that the Debtor has enjoyed the benefits of Bankruptcy Code without satisfying its burdens, including the fiduciary duties imposed upon him as a Debtor-in-Possession, and now he wants to dismiss for his own benefit rather than the benefit of creditors.

The FTC argued in favor of conversion because the estate needs an honest, law abiding fiduciary and Sann's long history of fraud and criminal conduct shows that he is acting in his

15

own interest and adverse to the best interests of creditors.  The FTC joins the UST's Motion on the grounds the creditors need protection from Sann.  FTC's counsel stated that if a trustee is appointed, the FTC will stipulate to modification of the asset freeze so that all estate assets may be transferred to a trustee for administration, and in addition will stipulate that the trustee can pursue avoidance actions under a longer six-year term under 28 U.S.C. § 3301, which would enable a trustee to reach the assets Sann transferred to Bibliologic more than 4 years ago.  FTC allowed that a compromise might be possible if a trustee is appointed, but that Sann "simply cannot be trusted."

Debtor consents to and asks for dismissal rather than conversion or appointment of a trustee.  Debtor's attorney stated at the hearing that the Debtor contends that he does not own anyone any money, and that the creditors are "crazy if they think" conversion would work out for them because the FTC's position is that all of Sann's assets are subject to a constructive trust. Debtor submits that the FTC simply wants someone other than him to negotiate.  Debtor suggests that there would be no harm to creditors if the case is dismissed, as a result of which the assets would remain subject to the asset freeze, which he argues would require a trustee in chapter 7 to wait for months or years before liquidating assets.  The FTC, Debtor suggests, could return to the federal district court, and the DOR could return to its administrative tax proceedings.  Sann's professionals would have to seek compensation from the federal district court upon dismissal, his attorney argued, and Sann would fight the FTC for the best deal or, if he prevails at trial, there would be money to pay all other creditors.

### B.  "Cause" under § 1112(b)(1).

The Ninth Circuit Bankruptcy Appellate Panel discussed § 1112(b)(1) in *In Re Sullivan*,

522 B.R. 604, 612 (9th Cir. BAP 2014):

> Section 1112(b)(1) provides in relevant part that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1).  If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court.  *Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 247 (6th Cir.2009); *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006) (chapter 13 case).  And, if a bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.  § 1112(b)(1), (b)(2); and *see Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958, 961 (9th Cir.2009) ("the court must consider the interests of all of the creditors"); *In re Prods. Int'l Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz.2008).

Debtor's attorney Schwartz agreed at the beginning of the hearing on April 16, 2015, that cause exists under § 1112(b),[6] but Debtor asks for dismissal rather than conversion.  Based on the Debtor's concession at the hearing, all parties agree that "cause" exists for dismissal or conversion under § 1112(b).  Thus, the Court finds that "cause" exists under § 1112(b) and the Court need not discuss it at length.  Some discussion, however, is necessary and appropriate.

This Court discussed the elements of "cause" under § 1112(b)(4) *In re Hinesley Family Ltd. Partnership No. 1*, 460 B.R. 547, 551-52 (Bankr. D. Mont. 2011):

> (4) For purposes of this subsection, the term 'cause; includes –

>> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>> (B) gross mismanagement of the estate;
>> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

---

[6]In Debtor's limited opposition Debtor claimed that the UST failed to establish cause under § 1112(b), so his attorney's concession at the hearing was a change in position.

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

Based on the evidence admitted at the hearing, this Court finds that "cause" is established under elements (A) (substantial or continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation), (B) (gross mismanagement of the estate), (F) (unexcused failure to satisfy timely the filing or reporting requirements established by the Code), and (J) (failure to file a disclosure statement or plan within the time fixed by the Code).  First, the

18

Debtor's monthly draw of $17,844 for living expenses excepted from the asset freeze (Ex. 21) is a substantial and continuing loss or diminution of the estate. Debtor's amended Schedule J puts his expenses, including a home mortgage, at only $6,565.21. No justification or explanation for the difference is provided and, thus, the Court finds that his draw is a substantial and continuing loss to or diminution of the estate. Debtor seeks dismissal and thus has abandoned his attempts at rehabilitation in chapter 11.

Second, this Court finds Sann's diversion of funds carved out of the asset freeze for payment of mortgages to pay his attorneys constitutes gross mismanagement of the estate. The diversion of funds by Debtor was without the required approval of the district court under the asset freeze and without the FTC's written consent. As a debtor-in-possession, Sann stands in a fiduciary relationship to the estate's creditors. *In re Perez*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994). His failure to pay mortgages resulted in foreclosure proceedings which put at risk the potential for liquidating assets for the benefit of unsecured creditors. That failure and his failure to commence proceedings to recover transfers from family members are in this Court's view inconsistent with his fiduciary relationship to the estate's creditors and constitute gross mismanagement of the estate.

Third, the evidence shows unexcused failures by the Debtor to satisfy the timely filing of MORs and the Form B26. The Debtor is represented by counsel and is charged with constructive knowledge of the law's requirements. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987). The requirement under chapter 11 for filing monthly operating reports is set forth in this Court's Montana Local Bankruptcy Rule 2015-2, which informs debtors that a notice of a delinquent MOR results in the Court immediately scheduling a show cause hearing. In this

19

case Sann did not file timely MORs, prompting the UST to file numerous Notices of Delinquent MOR and this Court to schedule numerous show cause hearings.  Debtor caused repeated waste of scarce judicial resources and the resources of the UST based on his failure to comply.

Fourth, Debtor has not filed a disclosure statement or plan, and in conceding cause and requesting dismissal of the case, and his possible impending incarceration, it is clear that he will not file a disclosure statement or plan within the time fixed by the Code or by order of the court. The Court concludes that the UST has satisfied its burden of proof under § 1112(b) for the Court to determine that cause exists under § 1112(b).  *Hinesley*, 460 B.R. at 553.

### C.  Best Interests of Creditors and the Estate.

The next required determination is to decide whether dismissal, conversion, or the appointment of a trustee is in the best interests of creditors, and whether unusual circumstances exist that establish whether dismissal or conversion is not in the best interests of creditors and the estate.  *Sullivan*, 522 B.R. at 612; *Hinesley*, 460 B.R. at 552-53.  This Court can find no unusual circumstances contemplated in § 1112(b) in this record which establish that converting or dismissing the case is not in the best interests of creditors in the estate.

Further, the Debtor seeks dismissal and has not established that a reasonable likelihood exists that a plan will be confirmed within a reasonable period of time.[7]  *See* § 1112(b)(2)(A); *Hinesley*, 460 B.R. at 553.  The grounds for conversion or dismissal shown by the evidence include § 1112(b)(4)(A), so § 1112(b)(2)(B) does not apply according to its own terms.

Turning to the evidence relating to the best interests of the creditors, this Court initially

---

[7]Debtor's petition states "Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D)."  Consequently the timeframes specified in 11 U.S.C. §§ 1121(e) and 1129(e) do not apply as referenced in 11 U.S.C. § 1112(b)(2)(A).

notes that both creditors, which filed joinders and appeared at the hearing, i.e., the DOR and FTC, seek conversion or appointment of a trustee in chapter 11. They each oppose dismissal. No creditor appeared in opposition to conversion or in support of Debtor's request for dismissal of this case.

Nevertheless, in *Sullivan* the BAP concluded that the bankruptcy court abused its discretion when it dismissed a chapter 11 case as a bad faith filing "by failing to consider whether conversion or dismissal was in the best interests of all creditors and the estate." 522 B.R. at 612. The BAP wrote that the bankruptcy court "had an independent obligation under § 1112 to consider what would happen to all creditors on dismissal and, in light of its analysis, whether dismissal or conversion would be in the best interest of all creditors, not just the largest and most vocal creditor. *See In re Owens*, 552 F.3d at 961 (agreeing with the Fourth Circuit that "when deciding between dismissal and conversion under 11 U.S.C. § 1112(b), 'the court must consider the interest of all of the creditors.' ") (quoting *Rollex Corp. v. Assoc. Materials (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir.1994))." *Sullivan*, 522 B.R. at 613.

The BAP explained:

> When determining the best interests of the creditors under § 1112(b), the Code's fundamental policy of achieving equality among creditors must be a factor considered, "and it is not served by merely tallying the votes of the unsecured creditors and yielding to the majority interest. *Rollex Corp. v. Assoc. Materials (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir. 1994); and *see In re Graphic Trade Bindery, Inc.*, 2012 WL 1232089 at *5, 2012 Bankr.LEXIS 1598 at *17 (Bankr. D.Md. April 12, 2012) ("the mere fact that a section 1112(b) motion seeks only conversion is no bar to dismissal if the court determines that dismissal is in the best interests of creditors and the estate. The opposite is also true. The task of the bankruptcy court is to determine which option is the better choice.").

*Sullivan*, 522 B.R. at 613.

The BAP reversed the bankruptcy court's dismissal of the case in *Sullivan* when the bankruptcy court did not consider the option of conversion instead of dismissal. *Sullivan*, 522 B.R. at 612, 613. The unrefuted evidence in *Sullivan* was that certain creditors had judgment liens superior to all of the unsecured creditors upon dismissal, but the judgment liens were subject to attack as preferences. *Id.* at 613. In addition no evidence existed that the unsecured creditors had any avenue for meaningful payment outside of a bankruptcy case and recovery of a tax refund would be enhanced in bankruptcy. *Id.* From this evidence the BAP concluded that dismissal was far less advantageous than conversion of the case for all creditors of the estate other than the judgment creditors; the BAP reversed dismissal because it was not harmless error. *Id.*

Debtor argues that unsecured creditors will get nothing if the case is converted because of the FTC's constructive trust claim. If the case is dismissed, Debtor contends, he will litigate against the FTC and prevail, and money will be available to pay all creditors. Debtor's optimism is not supported by the record.

Dismissal of the case would, as Debtor's counsel stated at the hearing, force the FTC to return to the district court, which has a freeze on Debtor's assets and the DOR to return to its administrative proceedings. He makes no specific prediction for the fate of the other unsecured creditors. However, the evidence showed that foreclosure proceedings were commenced against certain properties owned or controlled by the Debtor. In July 2015, the Debtor is likely to begin an imprisonment of at least 24 months. As such, his mobility and ability to participate in litigation and oppose foreclosure proceedings would be constrained. The loss of assets to foreclosure would harm the unsecured creditors if the case is dismissed.

On the other hand, if the case is converted to Chapter 7 or a trustee is appointed in chapter 11, the automatic stay would remain in place and a trustee can be appointed to investigate the Debtor's business affairs, marshall assets and negotiate and possibly cure the default which caused the properties to fall into foreclosure. No evidence exists in the record that the unsecured creditors "have any avenue for prompt or meaningful payment outside a bankruptcy case." *Sullivan*, 522 B.R. at 613.

Sann has pleaded guilty to three felonies according to the stipulated exhibits, including wire fraud and money laundering. The bankruptcy court in Nevada found that Sann attempted improper forum shopping by trying to escape the jurisdiction of the Montana federal district court and the district court found that Sann made unauthorized payments to his attorneys in contravention of the asset freeze instead of making mortgage payments. Dismissal of the case would leave this Debtor in place, subject to a preliminary injunction and asset freeze which he has demonstrated he has violated. The consequences of Debtor's conduct with respect to the asset freeze remain to be seen in the civil case.

This Court, when considering whether to dismiss the case, convert to chapter 7, or appoint a trustee, is convinced that the evidence shows that dismissal would be "far less advantageous for all creditors of the estate" than conversion. *See Sullivan*, 522 B.R. at 613. The evidence shows Sann committed criminal offenses, including wire fraud and money laundering, and ignored his fiduciary obligations to creditors by paying his attorneys with money meant for mortgage payments. Schwartz described Sann's guilty pleas as a hard choice to avoid a possible 30-year prison sentence. However, Ex. 25, the transcript of the hearing of Sann's change of plea to guilty in Case CR 13-43-M-DLC, includes Sann's statements at pages 24-25 that he did not

23

disagree with anything in the government's offer of proof of both felonies to which Sann pleaded guilty. In order to give credence to Sann's claim that he pleaded guilty to avoid a long sentence, the Court would have to find that Sann did not tell the truth at the change of plea hearing.

That brings us to the crux of the matter. Sann argues that the creditors will be better off after the case is dismissed and he defeats the FTC in litigation. While it certainly is possible that Sann ultimately will prevail against the FTC, it is in this Court's view unlikely. Furthermore, the evidence of Sann's conduct is that the unsecured creditors would wait a long time for payment if the case is dismissed. His imminent incarceration will last at least 24 months, after which when released he faces a prolonged period of litigation with the FTC. He expressed hope at the § 341 meeting that he could negotiate a good deal with the FTC, but the FTC deems him untrustworthy.

A trustee appointed in either chapter 7 or 11, by contrast, would start with a blank slate with creditors and the UST. A trustee could request relief from the asset freeze from the district court, could stop the $17,844 monthly draw from the Sann's assets currently in place, could seek recovery of the transfers of money and property to Sann's family members, entities, and attorneys from unauthorized diversions, could explore curing the default in mortgage payments to stop foreclosure proceedings and preserve estate property, could investigate the Debtor's businesses and financial affairs and arrange for the preparation and filing of tax returns which the evidence shows Sann has failed to file. With respect to recovering transfers, keeping the case in bankruptcy rather than dismissing the case extends the lookback period for recovering property, as explained by the FTC's joinder. Finally, a trustee could approach the FTC and the DOR and explore the possibilities of settlement in good faith, which Sann cannot do because of the state of his relations with these entities and the UST.

24

One factor which at least somewhat favors dismissal rather than conversion is that dismissal would avoid a potential for inconsistent decisions by this Court and the district court. It is uncertain how much leeway a trustee appointed would have. The district court has in its orders discussed above retained jurisdiction over the expenditure of Sann's assets, frozen his assets, and adopted a holding about the extent to which the FTC's enforcement action in CV 13-3-M-M-DLC falls within the exception to the automatic stay under § 362(b)(4).

Weighing these factors, after consideration of the evidence and the factors enumerated in *Sullivan*, 522 B.R. at 613, this Court finds and concludes that conversion or appointment of a trustee in chapter 11 is far more advantageous to all creditors than dismissing the case and leaving Sann in whatever control he has in his assets.

Turning to conversion versus appointment of a trustee in chapter 11, under § 1104(a)(1) cause exists for appointment of a trustee for cause based on the evidence in the record of Sann's fraud and dishonesty, as shown by his pleas of guilty to wire fraud and money laundering, and for gross mismanagement of the affairs of the Debtor before and after the commencement of the case, shown by his unauthorized diversion of funds in violation of the asset freeze, and improper forum shopping found by the Nevada bankruptcy court done in an attempt to escape the jurisdiction of the federal district court. In deciding whether to appoint a trustee in chapter 11 or convert the case to chapter 7, the Court concludes that conversion to chapter 7 is in the best interests of creditors and the estate.

Other than receiving rental payments, no ongoing business is involved in this case, no employees or suppliers exist and no prospect for reorganization is shown by the record. The Debtor is managing certain properties subject to mortgages and receiving rental payments from

25

an entity he owns, Sann, LLC.  Appointment of a trustee in chapter 11 pursuant to § 1104(a) would impose distractions and, in this Court's view, unnecessary and substantial costs and expenses related to the preparation of a disclosure statement and plan, approval of a disclosure statement, dissemination to creditors, solicitation, voting and participating in chapter 11 plan confirmation proceedings.  In a chapter 7 case a trustee would eliminate all of those reorganizational administrative burdens and expenses and would be able to investigate the Debtor's financial affairs, initiate proceedings to recover preferences and fraudulent transfers, negotiate with creditors, appear and seek appropriate relief from the district court, and administer assets.  What limited authority a trustee may need to operate a business of the Debtor in chapter 7, the trustee can request from this Court under 11 U.S.C. § 721.

In sum, the Court finds and concludes that conversion of the case to a case under chapter 7 of the Bankruptcy Code is in the best interests of creditors and the estate.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a).

2.  The U.S. Trustee's motion to dismiss or convert is a core proceeding under 28 U.S.C. § 157(b)(2).

3.  Cause exists under 11 U.S.C. §§ 1112(b)(1) & (b)(4)(A), (B), (F), and (J) to dismiss or convert this case to a case under Chapter 7 of the Bankruptcy Code.

4.  Conversion of the case to Chapter 7 is in the best interests of creditors and the estate.

5.  No unusual circumstances are shown by the evidence, which establish that converting the case is not in the best interests of creditors and the estate.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above converting this case to a case under Chapter 7 of the Bankruptcy Code, and denying Debtor's motion to extend the exclusivity period as moot.

BY THE COURT

*Ralph B Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

27