## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**STEVEN VINCENT SANN,**

Case No. **14-61370-7**

Debtor.

### *MEMORANDUM OF DECISION*

At Butte in said District this 15th day of December, 2016.

Pending in this Chapter 7 case is the Trustee's "Interim Application for Professional Fees and Costs (Goetz, Baldwin & Geddes P.C. – Contingency)" ("Application") (Document No. 668/669) in which the Trustee requests interim awards of fees for special attorneys employed by the estate:  Robert K. Baldwin and the law firm Goetz, Baldwin & Geddes, P.C. (hereinafter the "Goetz firm") in the amount of $140,126.24 plus 168.75 ounces of god and 3,262 ounces of silver, all on a contingency fee basis.  The Debtor Steven Vincent Sann ("Debtor" or "Sann") filed objections to this Application, to which creditor Terry Lane Sann ("Terry Sann")[1] filed a joinder.  A hearing on the Application was held at Missoula on November 3, 2016.  The Trustee and the Debtor both appeared.  Witness testimony was heard and exhibits were admitted.  At the conclusion of the hearing the Court granted the Debtor time to file a post-hearing brief, after which the matter would be taken under advisement.  After review of the Trustee's Application, objections and briefs, the record and applicable law, the Debtor's and Terry's objections will be overruled and the Trustee's Application for interim compensation will be approved under 11

---

[1] Terry is identified in Debtor's Statement of Financial Affairs as Debtor's wife.

1

U.S.C. § 331 by separate Order.

The Debtor filed his post-hearing brief on November 25, 2016. The U.S. Trustee ("UST") has not filed a response to this Application pursuant to 28 U.S.C. § 586(a)(3)(A).

This Court has exclusive jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a). The Trustee's Application for interim compensation is a core proceeding concerning administration of the estate under 28 U.S.C. § 157(b)(2)(A) & (O).

The Trustee Christy L. Brandon ("Brandon" or "Trustee") appeared at the hearing and testified, represented by attorney Trent M. Gardner ("Gardner") of the Goetz firm, who also testified. The Debtor appeared pro se by telephone and addressed the Court. Michael J. Sherwood ("Sherwood"), who was Debtor's former attorney in litigation against the Federal Trade Commission ("FTC") pending in the United States District Court for the District of Montana Cause No. CV 13-03-M-DLC (the "FTC case"), testified. Terry Sann appeared pro se. Trustee's Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, and Debtor's Ex. 11 and 12, all were admitted into evidence without objection. In addition the Court granted the Trustee's requests for judicial notice of several items on the dockets of the instant bankruptcy case and the FTC case.[2]

## FACTS & PROCEDURAL HISTORY

The facts relevant to this Application have been the subject of several contested matters and decisions in this case and related adversary proceedings. On January 8, 2013, the FTC filed a civil complaint against Sann, his spouse and other defendants in the United States District

---

[2]In particular, the Court took judicial notice of the transcript of a scheduling conference held in the FTC case on August 14, 2015. The transcript ("Tr.") was admitted into evidence at trial of Adversary Proceeding No. 15-00023 as Ex. P, and is found at attachment 16 of Docket No. 106 in Adv. No. 15-23.

Court for the District of Montana commencing the FTC case. The FTC's complaint sought injunctive and equitable relief against Sann for deceptive business practices which allegedly resulted in "cramming" unauthorized charges onto consumers' monthly telephone bills for services that they neither requested nor authorized, in violation of the FTC Act, 15 U.S.C. § 45(a). The complaint alleged that the cramming by Sann totaled over $70 million and resulted in net revenues to defendants of more than $26 million. Sherwood was Sann's local counsel in the FTC action until released in late 2015.

In the FTC case, the FTC sought a preliminary injunction, disgorgement of ill-gotten gains, and other equitable relief including a permanent injunction. The court in the FTC case entered an "Asset Freeze Order"[3] upon Sann and other defendants, but authorized Sann and his wife to use frozen funds to pay mortgage, personal and business expenses totaling $17,844 each calendar month.

Certain proceeds from the sale of apartments owned mostly by Sann, which required the FTC's consent for sale, were deposited into the trust account of Sherwood's law firm at the insistence of the FTC in order to preserve them. A total of $648,352.20 in sale proceeds was deposited into Sherwood's trust account with the FTC's consent.

Sann file a voluntary chapter 11 petition commencing the instant bankruptcy case in Las Vegas, Nevada, on September 29, 2014. Sann and Terry Sann both claimed Nevada residency. The FTC moved to transfer venue of Sann's bankruptcy case to the District of Montana, which was granted by order dated November 20, 2014, and accomplished on December 12, 2014.

The case docket for the instant case reflects at Doc. 125 that a "Notice of Commencement

---

[3]The Asset Freeze Order in the FTC case has been referred to by the parties and the Court in other proceedings as a preliminary injunction or "SPI."

of Chapter 11 Case and Meeting of Creditors" was filed on December 17, 2014.  The Bankruptcy Noticing Center ("BNC") mailed the Notice of Commencement by first class mail on December 19, 2014, to creditors and parties-in-interest.

On December 19, 2014, the district court in the FTC case entered a decision denying Sann's motions to modify the Asset Freeze Order and transfer all his assets to the bankruptcy court.  The district court noted several changes since the FTC case began, including criminal charges against Sann, his bankruptcy filing, and the court wrote that the FTC case is not subject to the automatic stay because of the exception outlined at § 362(b)(4).

On March 6, 2015, the UST filed a motion to convert the case to Chapter 7.  The FTC joined in the UST's motion.  The Debtor filed a response in opposition.  A hearing on the UST's motion to convert was held on April 16, 2015.  FTC's counsel appeared at the hearing and stated that if a trustee were appointed the FTC would stipulate to modification of the asset freeze so that all estate assets could be transferred to the trustee for administration.

On April 29, 2015, this Court entered a memorandum of decision and order converting the case to a case under Chapter 7 of the Bankruptcy Code.  The Court converted the case based: on substantial and continuing loss or diminution of the estate because of Debtor's monthly $17,844 draw for living expenses, which was excepted from the Asset Freeze Order; for gross mismanagement of the estate by Debtor's diversion of funds carved out of the asset freeze intended for payment of mortgages but used instead by Debtor to pay his attorneys; on Debtor's unexcused failure to file timely monthly operating reports and forms; and on Debtor's failure to file a disclosure statement or plan. Ex. 10, pp. 19.  The Court explained that conversion to chapter 7 rather than dismissal was in the best interests of creditors and the estate because an appointed trustee would be able to investigate the Debtor's business affairs, marshal assets and

4

try to cure defaults.

Sann filed a timely notice of appeal of the decision to convert the case. No stay was issued pending appeal. The district court affirmed this Court's Order converting the case on April 4, 2016.[4]

Brandon was added to the case as Trustee on April 30, 2015. She testified that the FTC case against Debtor and the Asset Freeze Order were matters which she had to address as part of her Trustee duties, and that she "stepped into the Debtor's shoes" upon conversion. She, as trustee, described her duties as maximizing the estate to get the highest distribution to creditors.

On May 12, 2016, the Trustee filed an application, Ex. 1, to approve employment of the Goetz firm as general legal counsel for the estate. Brandon testified that she applied to employ the Goetz firm because her review of the Debtor's Schedules revealed assets which she is required to administer. However, she testified that she quickly learned of risks involved in the case, including the FTC case, criminal actions against the Debtor, and Sherwood's refusal to turn over estate funds held in his trust account.

At paragraph 4, Ex. 1 explains the contemplated professional services to be provided by the Goetz firm to include: representing the Trustee in the FTC case; reviewing the ownership and exemptions of property; and assisting the Trustee in investigating and recovering avoidance actions against several parties, including Terry Sann, Bibliologic Ltd., Sherwood, and other entities. Gardner testified that this was a very complicated case as it included several recovery actions, the FTC case and FTC's request for imposition of a constructive trust.

---

[4]The district court's order affirming the conversion order is at Doc. 587 of the case docket. There does not appear to be a subsequent notice of appeal of the district court's order affirming conversion on the docket. Thus, the conversion order is final.

Paragraph 6 of Ex. 1 summarizes the fee agreements between the Trustee and Goetz firm. They include hourly fee rates for Robert K. Baldwin, Gardner and Kyle W. Nelson, but also contemplate at 6b a contingency fee basis for prosecution of certain claims, plus costs, which would be disclosed and submitted for court approval in a separate employment application. Gardner testified that the Goetz firm would not accept representation on an hourly fee basis in recovery actions, but the firm made an exception in this case in order to accept hourly rates in Ex. 1. The Court approved the terms of the Trustee's employment by Order entered May 13, 2015. Ex. 2.

On May 15, 2015, the Trustee filed a motion in the FTC case to be substituted in place of Sann for all matters that implicate property of the estate, based on her status as Trustee after conversion of Debtor's bankruptcy to Chapter 7. Sann objected and opposed the Trustee's motion. On May 18, 2015, the FTC filed a memorandum of law in support of its motion to modify the Asset Freeze Order in the FTC case to permit the Trustee to administer the Debtor's Chapter 7 estate. The FTC wrote that all of the Debtor's frozen assets are property of the estate, and that after conversion the Debtor no longer had any authority to use property of the estate because that authority was vested in the Trustee.

Gardner testified that the Trustee conducted two or three § 341 creditors' meetings, at which the Debtor promised to turn over funds to the Trustee, but that Debtor did not, except for small amounts, keep his promises. As a result of the Debtor's broken promises, Gardner testified, the Trustee was forced to demand turnover from Debtor's attorneys and seek a turnover order from this Court.

On May 27, 2015, Debtor's Nevada bankruptcy attorneys filed a motion for authority to apply $17,000 in their trust account to whatever of their requested fees the Court approved from

6

their final application for compensation.  The Goetz firm on behalf of the Trustee filed an

objection.  After a hearing held on July 28, 2015, this Court entered an Order on July 29, 2015,

holding Debtor's attorneys' motion to apply funds in abeyance while the district court in the FTC

case considers whether the funds were subject to its Asset Freeze Order.

 Brandon testified that she sent Sherwood a demand for turnover of the funds he held in

his firm's trust account and filed a motion for turnover of those funds by the Debtor.  She

testified that she believed, and the FTC agreed, that the funds held by Sherwood for the Debtor in

his trust account are property of the estate.  The Trustee testified that she sent Sherwood the

demand letter because she had not received estate property from the Debtor.

 Sherwood testified that he had suffered an injury, which delayed an immediate response.

Sherwood responded to the Trustee's demand by email on June 24, 2015.  Debtor's Ex. 12.  In

Debtor's Ex. 12, Sherwood denied the Trustee's demand for turnover of the funds because, he

testified, he was under a district court order in the FTC case.  He stated that he will continue to

pay Sanns approximately $17,000 per month for their living expenses pursuant to the Asset

Freeze Order until directed otherwise by the district court in the FTC case.[5]

 On June 19, 2015, the Trustee filed a motion for turnover in the Chapter 7 case.  The

motion, Ex. 7, requested an order directing the Debtor to turn over all funds in his bank accounts,

IRS tax refund, and all funds received by Debtor pursuant to the Asset Freeze Order.  The Debtor

filed an objection to the turnover motion stating that the Trustee's appropriate recourse was to

ask the district court in the FTC case to modify the Asset Freeze Order in order to obtain the

---

[5]Sherwood denied that Sann's then-bankruptcy attorneys advised Sherwood not to distribute funds to Sann.  This Court found otherwise in its Memorandum of Decision entered in Adv. No. 15-23, which Sherwood has appealed.  Sherwood testified that this Court was "confused" in its findings, and that he did not receive any instructions from Sann's bankruptcy attorneys.

relief the Trustee sought.

On July 9, 2015, the Trustee filed an amended application to approve employment of the Goetz firm, Ex. 3.  After some reductions in the Goetz firm's accrued hourly fees, Ex. 3 continues to request the hourly fee basis for the Goetz firm, but it adds at paragraph 8b a graduating contingency fee ranging from thirty percent (30%) to 45% (in case of appeal) of sums recovered for actions to recover fraudulent and preferential transfers.  The certificate of service on Ex. 3 shows that it was served on the Debtor at his Missoula address.  This Court's electronic case filing ("ECF") system shows that Ex. 3 was served electronically on Debtor's bankruptcy attorneys in Las Vegas, Nevada, and Billings, Montana.  Gardner testified that no objection to the Trustee's employment of the Goetz firm was filed in the last year and a half, either to the original employment application or the amended application, nor was any motion filed to reconsider the Trustee's employment of the Goetz firm on a contingency fee basis.

Gardner testified that the Goetz firm sought a contingency fee arrangement with the estate because of the risk it would not get paid anything.  He testified that as of July 2015 the Goetz firm was owed approximately $60,000 in attorneys' fees from the estate in this case, and that because the FTC was requesting imposition of a constructive trust over all of the Debtor's assets in the FTC case, a risk arose that nothing would be left in the estate to pay the Goetz firm or creditors.

This Court approved Ex. 3 and its contingency fee provisions by Order entered on July 9, 2015, Ex. 4.  The Debtor never filed an objection to the Trustee's applications to employ the Goetz firm, and has never filed a motion seeking reconsideration of this Court's Order approving the amended application to employ the Goetz firm at a contingency fee.

The Trustee sued Sherwood and his law firm in Adversary Proceeding No. 15-00023 on

July 16, 2015, before the district court ruled on the FTC's motion to modify the Asset Freeze Order and before the district court allowed the Trustee to be a party in the FTC case. The complaint avers the history of the FTC case; that Sherwood held trust funds in his trust account; that the Debtor claimed the trust funds as property of the estate, and that the FTC characterized them as property of the estate in its pleadings; the Trustee's demand to Sherwood for turnover; and Sherwood's refusal based on the Asset Freeze Order. Count I of the complaint seeks an order of turnover of the trust funds pursuant to §§ 542 and 543. Count II sought an accounting and repayment of improper disbursements to the Debtor. Sherwood filed a motion to dismiss Adv. No. 15-23, which was denied.[6]

A hearing on the Trustee's motion for turnover was held in this Court on July 28, 2015. As of that date, the district court still had not ruled on the Trustee's motion to be substituted for Sann in the FTC case as a party with respect to estate property. The Debtor was represented at the turnover hearing by attorney James A. Patten ("Patten").[7] Sherwood appeared by video as a witness in a different matter, and he testified that he was not aware of the turnover hearing.

This Court noted the Asset Freeze Order at the hearing and indicated it would defer to the district court with respect to the Asset Freeze Order. After the hearing on August 4, 2015, this Court entered an order, Ex. 8, granting the Trustee's motion for turnover. The Court ordered the Debtor to turn over to the Trustee all funds in his bank accounts on the date of conversion, the $53,532 for the three months of disbursements paid to Debtor by Sherwood from his trust account after the date of conversion, and funds held in Sherwood's trust account. Ex. 8 ordered

---

[6]After a trial, Judgment was entered against Sherwood in Adv. No. 15-23 on August 15, 2016. That Judgment is stayed, by agreement of the parties, pending Sherwood's appeal.

[7]Patten has practiced bankruptcy law in this Court for several decades.

that all property turned over to the Trustee which is subject to the Asset Freeze Order "will be held by the Trustee subject to the" Asset Freeze Order; and concludes by stating that, in order to avoid any conflict with the Asset Freeze Order, this Court "defers to the orders of the United States District Court" in the FTC case.  Ex. 8.

Sherwood testified that, as a result of Ex. 8, he prepared a notice to file with both courts stating that he intended to comply unless the district court ordered otherwise.  The Debtor argued at the November 3, 2016, hearing that he did not refuse the Trustee's demands for turnover except for the Asset Freeze Order, and that the Trustee also was awaiting a status conference scheduled to be held on August 14, 2015, in the FTC case to clarify whether the Debtor was required to turn over assets.

Sherwood and the Debtor appeared at a scheduling conference in the FTC case on August 14, 2015, at which, Sherwood testified, the district court authorized Sherwood to turn over the trust funds to the Trustee.  Gardner and Baldwin of the Goetz firm appeared for the Trustee. Gardner testified that it was an adversarial hearing at which the Debtor opposed the Trustee's efforts to obtain funds from the Debtor and his attorneys.

To paraphrase Hon. Dana L. Christensen's comments at the August 14, 2015, status conference, the district court noted that the Asset Freeze Order was issued prior to Sann's bankruptcy filing.  After the bankruptcy was filed and the case converted, the court stated that Sann's interest in property changed as a matter of law and became property of the bankruptcy estate, "and certainly the trustee has stepped into the shoes of Mr. Sann as it relates to the Chapter 7."  Tr., pp. 10-11.

To Sherwood, the court stated that he was subject to this Court's turnover order of the funds in this trust account, "and I'm not going to give you any comfort in terms of telling you

10

you don't have to do that.  Tr., p. 18.[8]  After Gardner related to the district court the assertions of

the Debtor and his attorneys that the Debtor did not need to turn over assets to the Trustee

because of the Asset Freeze Order, and Gardner's request for an order that the Asset Freeze

Order does not interfere with the bankruptcy court's jurisdiction and the Trustee's ability to

collect and administer the estate, the court declined to issue an advisory opinion that

accomplished nothing more than what the law provides for and stated the following:

> [I]f anybody's got any questions out there as to whether or not they can hide, as it relates to the ongoing Chapter 7 bankruptcy, they can hide in the skirts of this court as it relates to the FTC action, you are operating in an altered universe.
>
> We have an ongoing Chapter 7 bankruptcy proceeding. Mr. Sann elected to avail himself of the benefits of the bankruptcy laws. Now I understand it was a Chapter 11 -- or a petition under Chapter 11 filed in Nevada. His plan didn't come to fruition. That's not a criticism. That's simply an observation. And now we have a Chapter 7 with a duly appointed trustee being administered by Judge Kirscher in Montana. I am not going to interfere with that, and, as I said, in reading Judge Kirscher's order of August 4, 2015, I see nothing that is at cross-purposes or inconsistent with what I am trying to accomplish as it relates to the ongoing FTC, currently stayed FTC litigation. And, in fact, I do not see that -- I do not see where his order, as it relates to the stipulated preliminary injunction order, creates any problems as well as it relates to what this Court is doing concerning the same order. It's entirely deferential to the order.

Tr., p. 29.

On August 14, 2015, as a result of the district court's statements at the scheduling

conference, Sherwood mailed the Trustee's attorney a check for the remaining funds in his trust

account in the amount of $487,756.20.

On October 6, 2015, in Adv. No. 15-00024, this Court entered a judgment granting the

Trustee's motion for default judgment against Defendant Sann, LLC.  Ex. 11.  Ex. 11 declared

---

[8]The court also clarified for Sherwood that "you're not going to get in trouble with me for complying with Judge Kirscher's order."  Tr., p. 19.

Sann, LLC, to be the alter ego of the Debtor and pierced the corporate veil in reverse, making all of Sann, LLC's assets property of the Debtor's bankruptcy estate and avoiding a transfer of real property.

On January 20, 2016, without objection after notice this Court granted the Trustee's motion to approve compromise settlement with Bibliologic, Ltd, contingent upon the FTC's approval of the settlement. Ex. 13. Gardner testified that the estate recovered everything from Bibliologic in the settlement except for approximately $100,000 left to Bibliologic to be used for charitable purposes, not to include the Debtor. The district court in the FTC case entered an order on August 9, 2016, Ex. 14, granting its approval of the Trustee's settlement with Bibliologic. Ex. 14 ordered Bibliologic to transfer to the Trustee specific real property, vehicles and equipment, funds on deposit in accounts, and all gold and silver in Bibliologic's possession which was appraised on Ex. 6 at a total base value of $730,227.92.

On April 4, 2016, the district court in the FTC case entered an order granting the Trustee's motion to release approximately $50,000 of funds deposited by Sann with the Clerk of Court for his criminal defense. Ex. 12. The court noted in Ex. 12 that Sann's criminal matter was concluded, and the Asset Freeze Order was modified to allow the Trustee to administer Sann's bankruptcy estate.

In the instant case, on April 5, 2016, after a show cause hearing the Court entered a memorandum of decision, holding the Debtor in contempt for failing to fully comply with the turnover order by failing to pay the Trustee approximately $124,000. The Debtor did not appear at the hearing because of his incarceration in federal prison in Taft, California, and his attorneys had withdrawn.

Gardner testified that the Debtor later turned over some property, but not the bulk of

12

property that the Trustee had demanded be turned over.  There is no evidence and nothing in the
case docket indicating that the Debtor has cured the grounds for holding him in contempt.

Gardner testified that the estate received recoveries of money and properties as a result of
the Goetz firm's professional services.  He testified that the estate recovered seven pieces of
property, some of which have not yet been liquidated, and recovered the judgment against
Sherwood in Adv. No. 15-23, which is on appeal.

On September 8, 2016, the Trustee filed the pending Interim Application for Professional
Fees and Costs for the Goetz firm, Ex. 5.  In Ex. 5 the Trustee requests an interim award of fees
for the Goetz firm in the amount of $140,126.24 plus 168.755 ounces of gold and 3,262 ounces
of silver.  The $140,126.24 figure is itemized on page 4 of Ex. 5, and is calculated based on
funds recovered from trust accounts, accounts which were ordered turned over and actually
delivered to the Trustee, funds turned over from Schwartz's trust account in Nevada, and funds
turned over by the Clerk of Court after their release by the district court in the FTC case,
calculated at contingency rates ranging from 10% to 35%.  Ex. 5 does not request any fees from
the Trustee's action against Sherwood in Adv. No. 15-23.[9]

Debtor filed an opposition (Doc. 686) to the Interim Application on September 26, 2016,
and filed a supplemental opposition (Doc. 697) on October 11, 2016.  Terry Sann filed a joinder
in the Debtor's opposition.

The Trustee testified that, as a result of the Goetz firm's efforts, she has recovered more
than $1.2 million in property of the estate.  She testified that the contingency fee formula which
she requested for the Goetz firm was disclosed and approved, without objection, and is

---

[9]Footnote 5 on page 5 of Ex. 6 states that compensation will be sought at a later time from
any funds received after the appeal of Adv. No. 15-23 is final.

reasonable given the fact that the Debtor and Sherwood refused to turn over funds which were property of the estate. The Goetz firm, she testified, prevailed and recovered property, money and judgments for the estate.

Gardner testified that the Goetz firm expended more than 1,450 hours of attorney time on the matters subject to its contingency fee arrangement, which would exceed $350,000 in attorneys' fees if billed at their hourly rates. Brandon testified that an hourly rate would not be appropriate at this time for the Goetz firm because of the risk it took, and that failure to pay the approved contingency fee would have a chilling effect on the legal market because attorneys must be able to rely on orders approving the terms of their employment.

## DISCUSSION

This Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system . . . is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law. . . . Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993)).

14

## A. Contentions of the Parties.

The Trustee's Interim Application seeks an award of interim compensation in the amount of $140,126.24 plus 168.75 ounces of god and 3,262 ounces of silver, all on a contingency fee basis. The amounts are itemized on pages 4-5 of the Application, Ex. 5, and shows that the amounts are from the Goetz firm's recovery of funds in accounts, trust accounts, and funds on deposit with the Clerk of Court. The largest single source of the requested fees is $90,024.96 plus the gold and silver calculated on a 35% contingency fee rate from the settlement of Adv. No. 15-24 against Bibliologic, Ltd.

Debtor's objection (Doc. 686) argues that the contingency fee arrangement was overreaching and self-dealing by the Trustee and her counsel which betrayed the creditors. He argues that the Bibliologic, Ltd., matter was settled quickly and does not merit the contingency fee sought by the Trustee. Debtor further argues that the fees requested for investigating the FTC's Proof of Claim and negotiating a settlement with the FTC are unreasonable because he will file a motion for summary judgment in the FTC case which he believes will be successful and get the FTC case dismissed and its Proof of Claim disallowed.[10]

Debtor's supplemental opposition argues that he and Sherwood did not resist the Trustee's demands for turnover, but rather simply were waiting for a modified order from the district court in the FTC case authorizing them to turn over the funds. Debtor sought to avoid liability for being held in contempt if they had turned over the funds to the Trustee without a

---

[10] Debtor argues, as of September 19, 2016, that whether or not his position on the FTC case prevails will be known within "the next 4-8 weeks" and requests that this Court reserve its decision on this Application. Now more than 2 months have elapsed, and the Debtor's prediction that his position on this Application would be vindicated has not been shown to be true. Debtor has been given the time he said he needed, and the Court now proceeds to decide the pending Interim Application.

modification of the Asset Freeze Order.  Debtor argues that the Trustee did not disclose, in her amended application to employ the Goetz firm on a contingency fee basis, her motion for turnover and the FTC's motion to modify the Asset Freeze Order in the FTC case.  After the district court modified the Asset Freeze Order, Debtor argues, he and Sherwood would have turned over all funds and the Trustee would have funds to pay professionals hourly fees, which would total much less than the Goetz firm's "exorbitant" contingency fee request.

Debtor argues that the legal work necessary to pursue recovery from Bibliologic, Ltd., was minimal because the assets were easily recoverable and, again, argues that Debtor will prevail in the FTC case so the FTC's claim will be worth zero and be no basis for the Trustee's fraudulent transfer action.  Debtor argues that the Goetz firm's request for contingency fees in the Bibliologic, Ltd., matter is in excess of ten times the actual work performed and thus not reasonable, and the Trustee is breaching her fiduciary duties to creditors by pursuing this Application for contingency fees and diminishing the recovery by creditors.  Debtor argues that the contingency fee is not merited and the Court may allow compensation different under 11 U.S.C. § 328(a), so the Court should request from the Trustee an hourly bill from the Goetz firm.

The Trustee's response states that the Goetz firm has received no compensation to date on the contingency aspects of this case despite recovering almost $2 million for the estate, for which the Goetz firm expended 1,400 hours of attorney time worth $340,000 if billed on an hourly basis.  With respect to the original hourly fee arrangement, the Trustee argues, that was based on the expectation that Sherwood would promptly turn over the funds in his trust account, but he refused and as a result the Trustee did not have funds to pay the estate's professionals.  The Trustee filed the amended application to employ the Goetz firm on a contingency fee basis only for recovery of assets and funds, which was disclosed and approved without objection.  The

16

Trustee argues that the Debtor lacks standing to object, and that the Goetz firm's efforts were successful and the requested contingency fee is reasonable.

The Trustee argues that the proceeding against Bibliologic, Ltd., was not simple and required investigation, preparation of a summary judgment motion and preparation for trial before settlement, and that the FTC case, in which the FTC requested imposition of a constructive trust, was a risk to all assets of the estate if successful.  She argues that the contingency fees requested for the Goetz firm's work on the turnover motion, recovery of bank funds and trust funds (other than from Sherwood) were reasonable and necessary and were opposed by the Debtor and Debtor's professionals who sought to secure payment of their own fees with estate assets.  The Trustee points out that the Goetz firm already has voluntarily reduced or waived its contingency fee request for certain recoveries which were not opposed and no hearing was required.

Debtor filed a Sur-Reply on November 25, 2016 (Doc. 730).[11]  In it Debtor repeats his arguments that the contingency fee arrangement was not necessary and should be revoked, and the Goetz firm should be required to submit billing showing their services and be compensated at a lodestar hourly rate.  Debtor argues that, while the estate did not have funds on hand to pay professionals, funds were "identified and committed to the estate" and the Trustee had at least $77,928.39 in estate funds to pay professionals before she filed her amended application to employ the Goetz firm on a contingency fee basis, so the Trustee had no pressing concern for a contingency fee arrangement with the Goetz firm.  Debtor denies that he refused to turn over the

---

[11]By Order (Doc. 716) entered on November 3, 2016, the Court gave the Debtor until November 17, 2016, to file written post-hearing argument, after which the Application would be deemed submitted and taken under advisement.  Debtor did not ask for and was not granted an extension of time.  He filed his Sur-Reply a week late, on November 25, 2016.

assets identified in the contingency fee employment application, denies that there was any legal battle or challenge to the Trustee's turnover motion, and argues that if the Trustee had simply waited for the Court to rule on her turnover motion there would be no need to "share the estate with the professionals as contingent fees." Debtor concedes that the adversary proceeding against Bibliologic, Ltd., was contested, but in the end that matter was a "roll over" which should be subject to an hourly fee.

Next, Debtor argues that the adversary proceeding against Sherwood was a "mere sham" filed only to support a contingency fee. He repeats that the Asset Freeze Order issued in the FTC case prevented Sherwood, at risk of being held in contempt, from delivering the funds in his trust account to the Trustee, or ceasing Debtor's $17,000 monthly draws, until the Trustee filed a motion in the FTC case and obtained an order modifying the Asset Freeze Order. With respect to the gold and silver coins, Debtor objects that the Trustee's appraisal used the "melt value" rather than a greater numismatic value, and argues that the value of the coins,[12] and the Goetz firm's contingency fee request, are far greater than the Trustee stated and may exceed $1 million.

### B.  Interim Compensation – 11 U.S.C. § 331.

The Trustee's Application requests an award of interim compensation for the Goetz Firm. Interim fee awards are authorized by 11 U.S.C. § 331 which provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such

---

[12]Exhibits A, B, and C attached to Debtor's Sur-Reply were not offered into evidence at the hearing. The Trustee did not have the opportunity to object to their admission. Ex. A, B, and C therefore were not admitted into evidence for this contested matter. They provide no evidentiary support for the Debtor's arguments, and form no basis for this decision.

date as is provided under section 330 of this title.  After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

This Court liberally allows interim payments under § 331 to alleviate economic hardship in protracted causes and thereby facilitate competent and efficient administration.  *In re Towe*, 14 Mont. B.R. 214, 216 (Bankr. D. Mont. 1995) states:

In addition, this Court liberally allows interim payments under the provisions of 11 U.S.C. § 331.  *In re Brown*, 10 Mont. B.R. 309, 310-311 (1992).  In *Brown* the Court wrote:

> Section 331 of the Bankruptcy Code explicitly authorizes the interim allowance of interim compensation and reimbursement of expenses.  11 U.S.C. § 331; *In re Franklin F. Regan, Jr., (Regan)* 22 B.C.D. 713, 714 (Bankr. E.D.N.Y.1992).  The purpose of interim compensation to court approved officers prior to the outcome of the case is to alleviate economic hardship in protracted causes and thereby facilitate competent and efficient administration.  *Id.*  "Interim allowance" was a term of art under the former Bankruptcy Act, representing a payment on account of the final fee allowance awarded at the end of a bankruptcy case.  *Id.*
>
> At the end of a case the Court could evaluate fee applications in light of certain criteria, including the results achieved, the contribution of each party, the total amount available for distribution, and the aggregate economic burden that allowances of compensation might impose upon a debtor or estate.  *Id.*  The Third Circuit stated, "[s]ound practice dictates that ordinarily all final allowances, including those to the trustee and his counsel, should await consummation of the proceeding."  *Id. (quoting In re Keystone Holding Co.*, 117 F.2d 1003, 1006 (3d Cir. 1941)).

The evidence admitted at the hearing establishes that this is a complicated and protracted case.  The case began as a Chapter 11 case filed by the Debtor in Nevada, after the FTC case began and the Asset Freeze Order was issued.  Venue was changed to Montana.  The case was converted to a case under Chapter 7.  Property of the estate was disbursed among several separate entities, including law firms and charitable entities.  The Trustee made a determination that she needed to employ the Goetz firm, first on an hourly basis and then adding a contingency fee basis

19

for avoidance actions and turnover proceedings.  Gardner's testimony that the Goetz firm has expended approximately 1,450 hours and more than $350,000 worth of attorneys' fees is uncontroverted by any competent evidence.

The Court has reviewed the Debtor's and Terry Sann's oppositions and Debtor's Sur-Reply.  They both appeared pro se.  Courts have a duty to construe pro se pleadings liberally. *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The Debtor and Terry Sann each appeared at the hearing on this Application on November 3, 2016.  Neither the Debtor nor Terry Sann testified at the hearing, which would have subjected them to cross examination.  That is their right, but as a result the testimony of Gardner and the Trustee is uncontroverted.  The Court admitted Debtor's Ex. 11 and 12 at the hearing, but the exhibits attached to Debtor's Sur-Reply and his factual assertions therein were not disclosed or offered at the hearing, subject to challenge and cross examination.  The factual assertions in Debtor's Sur-Reply and exhibits attached thereto are not evidence and have no probative weight.

Therefore, based on the policy under § 331 to alleviate economic hardship in protracted causes and thereby facilitate competent and efficient administration, and the uncontroverted testimony of the Trustee and Gardner, the Court finds that it is appropriate to award the Goetz firm the interim compensation requested.  The evidence shows that the Goetz firm has received no compensation for 1,450 hours of attorneys' time on the matters subject to the contingency fee with respect to which, to date at least, the Goetz firm has been successful in recovering property. The Debtor offered no expert testimony or other evidence which supports his arguments that the matters were not complicated and the Trustee is overreaching by supporting a fee request.

With respect to the Debtor's request that the Court revoke its approval of the contingency

fee arrangement of the Goetz firm, the Court denies that request on procedural grounds. The
Trustee's amended application to employ the Goetz firm adding the contingency fee arrangement
was served on the Debtor and Debtor's attorneys. No objection was filed to the amended
employment application within a reasonable period of time, and no motion to reconsider the
Court's approval of the contingency fee was filed.

Rule 9013 provides that a request for an order "shall be by written motion . . . ." Debtor's
request that approval of the contingency fee arrangement for the Goetz firm be revoked is
included in Debtor's oppositions and Sur-Reply, which do not comply with the Rule 9013
requirement of a written motion. Pro se litigants must follow procedural rules. *See Clinton v.
Deutsche Bank Nat'l Trust Co. (In re Clinton)*, 449 B.R. 79, 83 (9th Cir. BAP 2011); *see also
Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) (stating that "pro se
litigants are not excused from following court rules."). The court has "no obligation to act as
counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231, 124 S.Ct. 2441, 159
L.Ed.2d 338 (2004); *see also Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("courts
should not have to serve as advocates for pro se litigants"). Debtor's request for affirmative
relief revoking the contingency fee arrangement and imposition of an hourly fee was not
presented to the Court in a written motion as required by Rule 9013, and therefore is denied on
procedural grounds.

Further, in two respects the Debtor's and Terry Sann's objections to the requested interim
contingency fee award are premature. First, interim fee awards under § 331 are interlocutory
only and not a final adjudication of the issue of compensation. *In re Columbia Plastics, Inc.* 251
B.R. 580, 590 (Bankr. W.D. Wash. 2000); *In re Callister*, 673 F.2d 305, 307 (10th Cir. 1982).
The relief awarded under § 331 in no way restricts a bankruptcy court's ability to craft a final

award under 11 U.S.C. § 330, because interim awards are always subject to the court's reexamination and adjustment during the course of a case. *Leichty v. Neary, (In re Strand)*, 375 F.3d 854, 858 (9th Cir. 2004). The Debtor argues that the Court should investigate and reduce the award to the Goetz firm. When the Trustee files an application for final compensation of the Goetz firm, the Court will reexamine the fees requested and any objection after notice, and may make a determination that an adjustment is appropriate. At present, however, Debtor's objections are premature and inconsistent with the policy of alleviating hardship and facilitating competent efficient administration under § 331.

Second, Debtor's and Terry Sann's objections are premature, in this Court's view, because the Debtor's optimistic predictions for his future success have not come to pass. Debtor argues that he will prevail completely over the FTC in the FTC case and win complete disallowance of its claim against him, and that the Trustee's adversary proceeding against Sherwood was a sham aimed only at gaining a contingency fee.

To date, nothing in the record indicates that the Debtor has prevailed in the FTC case. If Debtor does prevail, as explained above, the instant Application seeks interim compensation, which is subject to adjustment at the time final compensation is requested. Debtor's argument is premature and unsupported by any evidence. As for the Trustee's adversary proceeding against Sherwood, in which the Trustee won a judgment, it is irrelevant to the instant Application because no fees are requested from that matter.

The Court finds no merit in Debtor's contentions that he always intended to turn over funds and property to the Trustee, but delayed turnover because he was bound by the Asset Freeze Order. The above excerpts from the August 14, 2015, status conference in the FTC case show that the Asset Freeze Order never was considered by the district court as an excuse for the

Debtor to avoid his obligations under the Bankruptcy Code.

The Asset Freeze Order was entered before the bankruptcy case was converted to a Chapter 7.  Judge Christensen made clear that the Asset Freeze Order did not interfere with the bankruptcy court's jurisdiction and the Trustee's ability to collect assets of the estate and to administer the property of the estate.  The Trustee's duty to collect and reduce to money the property of the estate is specified in 11 U.S.C. § 704(a)(1).  The Trustee's turnover demand, motion for turnover, adversary proceedings, and motion for contempt all were done in furtherance of her trustee duties.

The Debtor has the duty under 11 U.S.C. § 521(a)(3) to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties . . . ."  The Debtor was represented by bankruptcy counsel in Nevada and Montana.  A person who has consulted with an attorney "can be charged with constructive knowledge of the law's requirements."  *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.1987).  The Debtor is charged with knowing about his duty to cooperate with the Trustee.  Debtor failed to perform his duty to cooperate,  using as an excuse the Asset Freeze Order entered by the district court.  Judge Christensen explained above that argument was "operating in an altered universe."

The Debtor's refusal to cooperate forced the Trustee, in order to perform her duty under § 704(a)(1), to write the demand letters, employ the Goetz firm, file motions for turnover and for contempt, and initiate adversary proceedings, which she did.  The Goetz firm's efforts resulted in orders for turnover and finding the Debtor in contempt, judgments and recoveries of properties and funds from accounts and the Clerk of Court, for which the Trustee applies for a contingency fee award.

Compensation based upon a contingency fee is contemplated and authorized under the

23

Bankruptcy Code.  11 U.S.C. § 328(a).  This Court has previously recognized the use of

alternative methods of calculating fees in *In re Foodservice Equipment, Inc.*, 14 Mont. B.R. 512,

513 (Bankr. D. Mont. 1995):

> The "lodestar" method, multiplying a reasonable number of hours by a
> reasonable hourly rate, is the primary but not exclusive method of
> calculating fees.  *Unsecured Creditors' Committee v. Puget Sound
> Plywood, Inc. (Puget Sound)*, 924 F.2d 955, 960 (9th Cir. 1991).  In *Puget
> Sound*, the Ninth Circuit affirmed an award based on an alternative
> formula based on a percentage of what the applicant recovered for the
> estate instead of the "lodestar" method.  *Id.* at 961.

Therefore, this Court approves the use of contingency fee awards to attorneys in

bankruptcy cases if the employment and fee arrangements are properly disclosed and approved.

In the instant case the Goetz firm's contingency fee arrangement was disclosed in the interim

employment application, Ex. 3, and approved by the Court and forms the basis of the requested

compensation.  The Debtor did not file an objection or motion for reconsideration of the

contingency fee arrangement until he filed his oppositions to the instant Application.

The evidence shows at Ex. 5, pp. 4-5, an itemization of the Goetz firm's requested

contingency fee from recovery of funds from several sources, the largest of which is the

$90,024.96 contingency fee and 168.75 ounces of gold and 3,262 ounces of silver requested as

35% of the recovery from the Bibliologic, Ltd., settlement.  The Goetz firm demonstrated

appropriate billing discretion by reducing its fee requested for recovery of funds from the Clerk

of Court to a 10% contingency fee, and by waiving more than a $3,000 contingency fee earned

from recovery of $10,793.64 from the trust account of Olshan, Frome, Woloksy, LLP.

Based upon these results, after independent review and after notice and a hearing, the

Court finds and concludes that the objections of the Debtor and Terry Sann to the instant Interim

Application are premature, unsupported by evidence and otherwise without merit, and that the services provided by the Goetz firm in representing the estate warrant the requested interim compensation under § 331 in the amounts requested.

**IT IS ORDERED** a separate Order will be entered in conformity with the above overruling the objections filed by the Debtor and Terry Sann; approving the Trustee's "Interim Application for Professional Fees and Costs (Goetz, Baldwin & Geddes P.C. – Contingency)" (Doc 668/669); and awarding and paying interim awards of fees for special attorneys for the estate Robert K. Baldwin and the law firm Goetz, Baldwin & Geddes, in the amount of $140,126.24 plus 168.75 ounces of god and 3,262 ounces of silver, on a contingency fee basis, with final approval to await the filing of a final application for professional compensation for the Goetz firm.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge